The following constitutes
the order of the court. Signed May 14, 2015

*M. Elaine Hammond*

**M. Elaine Hammond
U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | ) Case No. 12-58699 MEH |
| | ) |
| Carlos Eduardo Porras, | ) Chapter 13 |
| | ) |
| | ) Date: April 17, 2015 |
| Debtor. | ) Time: 1:00 p.m. |
| | ) Ctrm: 214 (Salinas) |
| | ) |

<u>**MEMORANDUM DECISION**</u>

A hearing was held April 17, 2015 on the Chapter 13 Trustee's motion for instruction regarding disposition of held funds.  Mr. Porras, the above-named Debtor, appeared pro se. Cathleen Moran, Mr. Porras's previous attorney in the case, appeared on behalf of Moran Law Group, Inc. ("Moran").  Jane Bohrer appeared on behalf of the standing Chapter 13 Trustee, Devin Derham-Burk ("Trustee").

During the period the Trustee's motion was pending, Mr. Porras filed a motion to modify his confirmed plan (Dkt. #225), and a hearing was held on Ford Motor Credit Company's motion for relief from stay.  Following the relief from stay hearing, Mr. Porras filed a request for reconsideration of the court's ruling on the stay motion (Dkt. #234).

As such, this memorandum decision addresses the following issues:  (1) the effect of filing a motion to modify, (2) the effect of filing a motion to modify on a pending motion for relief from stay, and (3) disposition of certain funds received by the Trustee post-confirmation.

1

Background

## I.     Chapter 11 Petition and Conversion to Chapter 13

Mr. Porras filed this case as a Chapter 11 case, acting pro se, in December 2012. Attorney Jason Vogelpohl ("Vogelpohl") subsequently substituted into the case as Mr. Porras's counsel. The case was converted to a Chapter 13 case in February 2013 upon Mr. Porras's request. The court confirmed Mr. Porras's Chapter 13 plan in January 2014 (the confirmed plan is referred to as the "Plan").

## II.    The Vogelpohl Retainer

While Mr. Porras was in Chapter 11, Vogelpohl requested and received a $10,000 post-petition retainer. He did not seek or obtain an order authorizing his employment in the case, nor did he seek or obtain court approval of the retainer. In April 2014, Vogelpohl withdrew as counsel in the Chapter 13 case. In August 2014, Moran substituted into the case and promptly sought assistance from the United States Trustee ("UST") regarding the unauthorized fees. In October 2014, the UST contacted Vogelpohl and asked him to return the retainer to the Trustee or to Mr. Porras. After some discussions with the UST, Vogelpohl agreed to disgorge the funds. On November 3, 2014, he provided the Trustee with a $10,000 check for the entirety of the unauthorized fees (the "Funds"). The Trustee promptly posted the Funds to Mr. Porras's account, as required by her auditors, and placed a hold on disbursement of the Funds pending disbursement calculations and a determination as to whether the Funds would require the Plan to be modified.

On November 5, 2014, Moran wrote the Trustee expressing concerns that the Trustee had double-counted the Funds in her disbursement calculations. According to Moran, the Funds came from a $75,491.55 judgment that Mr. Porras had listed in his Schedule B ("Judgment"). Accordingly, she argued, the Funds "should not alter the liquidation analysis, but should be applied to payments due under the modified plan." She later provided the Trustee evidence that traced the Funds back to the Judgment to the Trustee's satisfaction. None of the parties currently dispute that the Funds trace back to the Judgment.

2

On November 25, 2014, Moran filed her fee application in the case, as well as Mr. Porras's motion to voluntarily dismiss the case. On December 10, 2014, Moran substituted out of the case, at which point Mr. Porras again began representing himself. That day, Mr. Porras wrote the Trustee and asked her to halt any distribution of the Funds until the court ruled otherwise.[1] Four days later, on December 14, he faxed the Trustee a demand letter for the immediate release of the Funds.

The court conducted a hearing on Mr. Porras's motion to dismiss on December 18 and continued the hearing to be heard together with Moran's fee application on December 22. On the day of the continued hearing, Mr. Porras withdrew the motion to dismiss. At the hearing, the parties discussed the issue of the disposition of the $10,000. That dispute not being before the court to decide, the court notified the parties that the money should not be distributed until further court order. The fee application was taken under submission.

On December 24, Mr. Porras again contacted the Trustee with a letter stating that the Trustee had not responded to his December 14 letter demanding the Funds. The Trustee responded that she could not release the Funds to anyone without a further court order. The next week, the court issued an order allowing the majority of Moran's requested fees. Mr. Porras filed a motion for reconsideration, which the court denied. The order denying reconsideration is on appeal to the district court.


### III.    The Motions to Modify Plan and Motion for Relief from Stay

Debtor filed two motions to modify his Plan post-confirmation. The first motion, filed in August 2014, was denied after a hearing on February 13, 2015.

Subsequently, Ford Motor Credit Company ("FMC") filed a motion for relief from the automatic stay, asserting a substantial post-petition default on Mr. Porras's vehicle payments.

---

[1] Mr. Porras's letter is unclear. Although it requests to stop any distribution, by its tone and surrounding language it also appears to request a disbursement.

3

The day before the stay relief hearing, Mr. Porras filed a second motion to modify his Plan.[2] In the second motion to modify, Mr. Porras seeks to waive the five monthly payments he missed between November 2014 and March 2015.

At the stay relief hearing on April 10, 2015, FMC's counsel proposed that Mr. Porras pay $3,403.15 from the Funds as adequate protection payments to bring him current. Mr. Porras opposed FMC's motion for relief from stay, arguing that the motion was moot on the basis the motion to modify he filed the day before waived the plan payments that would have been the source of adequate protection payments to FMC. At the relief from stay hearing, the court informed Mr. Porras that she did not find this argument compelling as the modified plan neither provided FMC with the adequate protection it was entitled to receive, nor proposed a prompt cure of such payments. Ultimately, Mr. Porras accepted FMC's proposal for adequate protection payments. On that basis, the court instructed FMC's counsel to submit an order granting FMC adequate protection ("Adequate Protection Order"). Prior to entry of the order granting relief from stay, Mr. Porras filed his request for reconsideration.

Discussion

## I.     The Effect of Filing a Motion to Modify a Chapter 13 Plan

A chapter 13 debtor is required to promptly propose a plan upon the filing of their case. The plan must be consistent with the requirements set forth in § 1322 of the Bankruptcy Code.[3] Like many other courts, the San Jose division of the Northern District of California has adopted a form plan for use by chapter 13 debtors. Notice of the proposed plan is served upon all creditors, and they have an opportunity to object to the proposed plan and request a hearing. Ultimately, once any objections are satisfied or overruled, the court will confirm a plan if it complies with the requirements for confirmation set forth in § 1325. Upon

---

[2] Three objections to the motion to modify have been filed. The Trustee noticed the motion to modify for hearing on May 22, 2015. The court recently granted Mr. Porras's request to continue the hearing on the second motion to modify to June 19, 2015.

[3] 11 U.S.C. § 101, *et seq.* Unless otherwise stated, code sections provided herein refer to the Bankruptcy Code.

4

UNITED STATES BANKRUPTCY COURT
for the Northern District of California

confirmation, an order confirming plan is entered by the court. The confirmation order authorizes the chapter 13 trustee to distribute payments to creditors in accordance with the terms of a debtor's plan.

After confirmation, a debtor may need to modify their plan due to a change in circumstances. For example, debtors frequently need to reduce their monthly plan payments due to a loss of income, or need to increase their monthly plan payments because the creditor claims filed in the case are greater than anticipated by the debtor. Section 1329 governs modifications of a plan after confirmation.[4]

Section 1329(b)(2) provides: "The plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved." This statutory language has resulted in formal interpretation by at least one court, and informal interpretations by Chapter 13 trustees in its implementation. At the hearing, the Trustee stated that it has been her practice to allow a debtor to make payments in the amount provided for in the motion to modify while notice runs and the motion is pending. This is consistent with the language of § 1329(b)(2), and also the approach taken by other bankruptcy courts and chapter 13 trustees.

But when a motion to modify is denied – as is the case here – do the terms of the confirmed plan or the proposed modified plan control for the period during which the motion was pending? In a departure from her past practice,[5] the Trustee asserts in her motion that the terms of the proposed modified plan should control during this period. The Trustee's position is drawn from *In re Taylor*, 215 B.R. 882 (Bankr. S.D. Cal. 1997). Mr. Porras supports application of *Taylor* as proposed by the Trustee.

In *Taylor*, the bankruptcy court held that the debtor "was obligated to commence making payments at the modified rate after filing and giving notice of the modified plan." *Id.* at 884. Further, if the modified plan were to be subsequently disapproved, "then the

---

[4] The confirmation requirements set forth in § 1325(a) also apply to any modification of a confirmed plan. *See* § 1329(b)(1).

[5] At the hearing, Trustee's counsel stated that it has been the Trustee's practice to revert to the terms of the confirmed plan upon denial of a motion to modify. The policy advocated here is adopted by the Trustee as a result of research for this motion.

5

previously confirmed plan [would resume] as the controlling plan, but the debtor [would not be] in default if the debtor performed at the modified rate in the interim." *Id.* It is important to recognize that *Taylor* is not binding on this court. Even if it were, *Taylor's* analysis regarding a debtor's performance of a subsequently disapproved plan is dicta. In *Taylor*, the chapter 13 trustee sought dismissal of the case after the debtor obtained approval of a modified plan because the debtor was in default, as the trustee argued, because she did not make the higher payments required by the confirmed plan during the period in which the motion to modify was pending. No motion to modify was disapproved in *Taylor*. This court does not find *Taylor's* analysis persuasive in the case of a motion to modify that is denied.

The first step in interpreting a statute is to review the language of the statute itself. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030 (1989). If the statute's language is plain, no further inquiry is required and the court's role is to enforce it according to its terms. *Id.* Section 1329(b)(2) states that "The plan as modified becomes the plan *unless* . . . such modification is disapproved." (emphasis added). Its plain meaning is that the modification applies unless the court determines that it should not. Certainly, this is not an absurd result.

Once a court determines that the modification should not apply, the statutory language does not support revival of the proposed terms during the interim period the motion was pending. It is generally presumed that Congress acts intentionally in including particular language in one section of a statute and omitting it elsewhere. *Keene Corp. v. United States*, 508 U.S. 200, 208, 113 S. Ct. 2035, 2040 (1993). Within the Bankruptcy Code, Congress has used the phrases "unless and until" and "unless" to reach alternate results. *Compare* § 365(n)(4) ("*Unless and until* the trustee rejects such contract") *with* § 365(d)(5) ("The Trustee shall timely perform all of the obligations of the debtor, … *unless* the court … orders otherwise) (emphasis added). Section 1329 clearly states that the plan as modified becomes the plan *unless* such modification is disapproved. There is no statutory basis to support a finding that the modified plan should apply during the period it is pending once it is disapproved.

Case: 12-58699    Doc# 251    Filed: 05/14/15    Entered: 05/14/15 15:21:32    Page 6 of 13

Further, as a policy matter, construing § 1329(b) to allow a denied motion to supersede a prior order is contrary to standard court procedure. It also could lead to abuse by unethical parties. For example, a debtor might file successive motions to modify that are incapable of being approved in order to maintain the protections of bankruptcy while not performing a debtor's obligation for the relief provided through chapter 13.

In sum, this court finds that the terms of a motion to modify a plan apply from the time that the motion is filed until the modification is disapproved. When a modification is disapproved, the plan terms revert to those provided in the confirmed plan in effect immediately prior to the filing of the modification, as if the modification were never filed.

## II.    The Effect of a Pending Motion to Modify on a Motion for Relief from Stay

A second issue arises though if the Trustee is authorized to accept payments pursuant to a motion to modify while the motion is pending – what is the effect of a motion to modify on a motion for relief from stay?

The court confirmed Mr. Porras's Plan on January 22, 2014. The Plan requires payments of $2,000 per month, with a step-up after 12 months of payments at that amount to $4,010 per month. By its terms, $200 of each monthly payment is due to FMC as adequate protection for its secured claim. Since confirmation, Mr. Porras has been unable to make the monthly payments of $2,000, or the $4,010 step-up. Between confirmation of the Plan and February 2015, Mr. Porras paid approximately $3,500, in total, to the Trustee.

FMC filed a motion for relief from stay on March 23, 2015. It asserted cause existed to grant relief from stay because FMC's interest was not adequately protected due to Mr. Porras's failure to make Plan payments to the Trustee. The last payment FMC received from the Trustee was in November 2014. FMC noticed its stay relief motion for hearing on April 10, 2015.

One day before the hearing, Mr. Porras filed a new motion to modify his Plan. This motion sought to suspend – meaning cancel – his payments due for November 2014 through

7

March 2015, and reduce his payments to $1,000 per month beginning in April 2015. In essence, rather than seeking to cure the default in adequate protection payments due to FMC, Mr. Porras sought to void the obligation to make such payments.

Section 362(d)(1) authorizes a court to grant relief from stay for cause, including the lack of adequate protection of a creditor's interest in property. The statute specifically authorizes the court to terminate, modify or condition the stay. § 362(d). In the normal course, if a debtor defaults on their payment obligations and the creditor is not otherwise adequately protected, the debtor is allowed an opportunity to cure the default. This is accomplished by conditioning the stay upon the debtor's making adequate protection payments in an amount sufficient to cure the default over a reasonable period of time. *See* 11 U.S.C. § 361 (providing examples of adequate protection); 3 Collier on Bankruptcy ¶ 361.01 (Alan N. Resnick & Henry J Sommer eds., 16th ed.) ("the parties may agree on appropriate protection, the entity may request particular protection or the trustee or debtor in possession may propose protection that it believes is adequate."); *Id.* at ¶ 362.07[1] ("The effect [of § 362(d)(2)] is to permit the court to fashion the relief to the particular circumstances of the case.").

Here, Mr. Porras argued that the motion for relief from stay was moot because he had filed a motion to modify that waived his obligation to make the payments. No adequate protection for the prior missed payments was offered.

The court finds that a motion to modify that seeks to waive a default in plan payments does not address the default in adequate protection required by the plan and the Bankruptcy Code. More directly, it does not provide a basis upon which to condition the stay for purposes of § 362(d). In the absence of adequate protection, relief from stay should be granted.

At the April 10 hearing on relief from stay, the Court explained to Mr. Porras why his argument was not persuasive. Ultimately, Mr. Porras agreed that adequate protection payments could be distributed to FMC from the Funds being held by the Trustee. The court approved the continuation of the automatic stay based on the curing of the default. Shortly after the hearing, and before the proposed order was presented to the court, Mr. Porras

requested reconsideration of this relief. As the court's ruling was premised upon Mr. Porras's agreement to the provision of adequate protection, the court will grant Mr. Porras's motion for reconsideration and set a further hearing on FMC's relief from stay motion on May 29, 2015 at 10:00 a.m.

### III. Disposition of the Held Funds

In December 2014, when Mr. Porras sought to dismiss his case, an issue arose over whether or not the Funds should first be distributed according to the Plan at the time of dismissal. The issue presented in December no longer exists, as Mr. Porras is not seeking dismissal of this case. Instead, the question has become whether the Trustee should maintain the Funds for future distribution to creditors or turn them over to Mr. Porras pursuant to his demand.[6]

The Trustee currently holds the Funds disgorged by Vogelpohl. The Funds were traced to the satisfaction of the Trustee to a prepetition judgment obtained by Mr. Porras. Mr. Porras included this judgment as an asset in Schedule B filed at the beginning of his case.

Section 1306 provides that property of the estate in a chapter 13 case includes the broad definition of estate property identified in § 541, in addition to after acquired property and earnings. But unlike in chapter 7, unless provided otherwise in a confirmed plan, the debtor shall remain in possession of all property of the estate. § 1306(b). Instead of liquidating assets to pay creditors, debtors with regular income have the option of retaining their prepetition assets, in exchange for which they must commit all postpetition disposable income for a period of 3 to 5 years. If the debtor makes all the payments under the plan, the debtor's dischargeable debts are discharged, and the debtor keeps their prepetition assets.

---

[6] Moran filed an opposition to the Trustee's motion asserting that this issue is not ready for determination as a dismissal is no longer pending. The additional arguments presented focus on the potential impact of counsel's willingness to undertake a post-confirmation representation, where there is no provision for payment of authorized fees from funds on hand prior to distribution to the creditor. The court recognizes the potential effect on pro se debtors but has not identified any grounds upon which these policy concerns should supersede statutory authority.

9

This has been described as the "The Chapter 13 Deal." *See In re Burgie*, 239 B.R. 406, 410 (B.A.P. 9th Cir. 1999).

In addition, upon confirmation of a chapter 13 plan, all property of the estate not only remains in the debtor's possession but also vests in the debtor, unless the plan provides otherwise. § 1327(b). Mr. Porras elected to have all property vest in him upon confirmation. Thus, "[he] once again became the owner of [his] property at confirmation, except as to those sums specifically dedicated to fulfillment of the plan." *In re Jones*, 657 F.3d 921, 928 (9th Cir. 2011). We look then to whether Mr. Porras specifically dedicated the Funds, or the judgment to which they trace, to fulfillment of the Plan. The Plan confirmed by Mr. Porras provides: "The future earnings of the Debtor are submitted to the supervision and control of the Trustee". Therefore, the only estate assets that Mr. Porras specifically dedicated to fulfillment of his Plan are future earnings. The Funds are proceeds of a prepetition judgment. They are not future earnings. The Funds vested in Mr. Porras upon plan confirmation.

This determination does not conflict with § 1326, the Bankruptcy Code provision addressing chapter 13 payments. Section 1326(a)(1)(A) requires a debtor to make payments to the trustee in the amount proposed by the plan. If there is a confirmed plan in the case, then § 1326(a)(2) requires the trustee to "distribute any such payment in accordance with the plans as soon as is practicable." But § 1326(a)(2) specifically refers to "[a] payment made under paragraph (1)(A)." The Funds received by the Trustee are not in the amount or of the type required by the Plan, and most importantly, they were not paid to the Trustee by Mr. Porras. As such, the Funds are not a payment subject to § 1326.

Accordingly, the Trustee is authorized to disburse the Funds to Mr. Porras based upon his prior requests for their turnover.

## IV. No Violation of the Automatic Stay

Mr. Porras's opposition argues at several points that the Trustee's retention of the Funds during this period is a violation of the automatic stay as an act to exercise control over

property of the estate pursuant to § 362(a)(3). There is no stay violation because upon confirmation of Mr. Porras's Plan the Funds were no longer property of the estate.

The filing of a bankruptcy petition operates as a stay of numerous acts to obtain or control recovery from or property of a debtor. § 362(a). This stay only operates so long as the property is an asset of the debtor's bankruptcy estate. Upon plan confirmation, Mr. Porras elected to have all estate property vest in him. The Funds were recovered and transferred to the Trustee after confirmation of Mr. Porras's Plan. Since the Funds had already vested in Mr. Porras and were no longer property of the estate, there can be no stay violation. *See Mwangi v. Wells Fargo Bank (In re Mwangi)*, 764 F.3d 1168, 1179 (9th Cir. 2014) (finding no stay violation once funds held by bank revested in the debtors because no longer subject to § 362(a)(3)'s protections).

Impact of Decision on Proceedings

Currently, Mr. Porras has a confirmed Plan. He has stated numerous times in court that he is unable to perform under this Plan. His first motion to modify was denied, and has no effect on this case. Therefore, he is currently in substantial default. To address this, Mr. Porras filed a second motion to modify. Three parties have filed objections to it. The second motion to modify is set for hearing on June 19, 2015. If the second motion to modify is granted, then the terms of the proposed plan modification will apply for the remainder of the case, subject to any future modification. But if the second motion to modify is denied, then Mr. Porras's case is likely to be dismissed soon thereafter based on his inability to comply with the terms of the confirmed Plan.

A hearing on FMC's motion for relief from stay will be held on May 29, 2015 at 10:00 a.m. At that hearing, if the prior plan default is not cured or to be promptly cured, then FMC's request for relief from stay will likely be granted. As FMC's collateral is a vehicle, which generally has decreasing value and neither adequate protection payments nor payments on FMC's claim are being made, relief from stay is appropriate pursuant to § 362(d)(1).

1   The Trustee is authorized to distribute the Funds to Mr. Porras upon entry of an order

2   in accordance with this Memorandum Decision.

3

4   ***END OF MEMORANDUM DECISION***

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case: 12-58699    Doc# 251    Filed: 05/14/15    Entered: 05/14/15 15:21:32    Page 12 of
13

**COURT SERVICE LIST**

Carlos Eduardo Porras
P.O. Box 5082
Carmel, CA 93921

<u>Via ECF</u>:

All ECF Recipients

UNITED STATES BANKRUPTCY COURT
for the Northern District of California